(No. 47371.—

GENERAL MOTORS CORPORATION, FISHER BODY DIVISION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Grady A. Pardue, Appellee and Cross-Appellant.)

*Opinion filed November 25, 1975.*

SCHAEFER and CREBS, JJ., took no part.

Thomas D. Nyhan and Alan C. Garrett, of Chicago (Pope, Ballard, Shepard & Fowle, of counsel), for appellant.

Discipio & DeCarlo, of Chicago (Vito D. DeCarlo, of counsel), for appellee and cross-appellant.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from the circuit court of Cook County in proceedings to review orders of the Industrial Commission. (Ill. Rev. Stat. 1973, ch. 110A, par. 302(a).) The facts pertinent to the issues on appeal are undisputed. On May 15, 1970, claimant, Grady Pardue, suffered an accidental injury to his left hand, which arose out of and in the course of his employment as a millwright for the Fisher Body Division of General Motors (hereinafter employer). The claim was settled on April 22, 1971, without arbitration proceedings by the payment of $675 based upon 9½ weeks of compensation at the rate of $71 per week for a 5% loss of use of the left hand. The settlement was reported to the Industrial Commission as required by section 6 of the Workmen's Compensation Act. (Ill. Rev. Stat. 1969, ch. 48, par. 138.6.) The report used to inform the Commission of the final payment of compensation under this settlement is commonly referred to as a "green sheet."

On November 22, 1971, claimant suffered a second injury to the same hand and filed an application for adjustment of claim. At a hearing before an arbitrator, the parties stipulated that the injury arose out of and in the course of employment, that the claimant was married and that he had four children under eighteen years of age. The sole issue in dispute was the nature and extent of the injury. From the evidence adduced, the arbitrator found that claimant had suffered accidental injuries causing the permanent and complete loss of use of the left hand to the extent of 25% and awarded compensation. The arbitrator, however, refused to allow the employer credit for the previous 5% disability to claimant's left hand. Moreover, the arbitrator awarded 47½ weeks of compensation at a weekly rate of $85, while the employer maintained that $71 was the proper weekly rate at the time of claimant's

injury.

On review before the Industrial Commission, the arbitrator's decision was affirmed. On *certiorari* to the circuit court of Cook County, the decision of the Industrial Commission was reversed in part. The circuit court held that the employer was entitled to credit for the amount of compensation paid for the prior injury, and that the higher rate of compensation was effective at the time of claimant's second injury. Because the rate of compensation applicable on the dates of the respective accidents was different, the circuit court determined that the employer was entitled to credit for the dollar amount paid rather than credit for the percentage of disability compensated.

The employer appeals contending that the higher compensation rate applied had not yet come into effect at the time of claimant's second injury, and that it is entitled to credit for the percentage of the disability. The claimant cross-appeals maintaining that the settlement for his prior injury was not an "award" under the Workmen's Compensation Act which would be credited toward a subsequent award.

Prior to the 1971 session of the General Assembly, the weekly rate of compensation payable to a married employee with four children under the age of eighteen, who sustained a disability similar to claimant's, was $71. (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(b)4(b).) The 1971 General Assembly passed House Bill 844 prior to July 1 of that year amending this provision, among others, of the Workmen's Compensation Act by increasing the weekly rate to $85. Under section 9(e) of article IV of the Illinois Constitution of 1970, the Governor made specific recommendations for changes in the bill and returned it. Both houses of the General Assembly concurred in the amendatory veto and sent the bill back to the Governor, who on October 28, 1971, certified that the concurrence of the General Assembly conformed to his specific recommenda-

tions, and the measure became law as Public Act 77—1659. (Laws of 1971, p. 3103.) The bill contained no provision providing for a specific effective date, or that it should become effective upon its becoming law.

The employer maintains that Public Act 77—1659 could not have become effective prior to July 1, 1972 (approximately 7 months after the accident for which claimant seeks recovery), and that the circuit court erred in holding the effective date was October 28, 1971. In support of this contention, it relies on *People ex rel. Klinger v. Howlett,* 50 Ill.2d 242, which involved the issue of the effective date of three bills that had a legislative history identical to that of Public Act 77—1659. The bills in issue were passed by the General Assembly prior to July 1, 1971. On September 10, 1971, the Governor returned the bills with recommended changes which were accepted by both houses in October, and on October 28, 1971, the Governor certified that the acceptance of the General Assembly conformed to his recommendations. In *Klinger* we considered the constitutional and legislative provisions dealing with the "effective date of laws" in effect on October 28, 1971 (Ill. Const. 1970, art. IV, sec. 10; Ill. Rev. Stat. 1971, ch. 131, par. 21), and found that the earliest date which the three bills could become effective was July 1, 1972. The factual similarity of that case with the present case makes the rationale expressed in *Klinger* controlling. Accordingly, the earliest effective date for Public Act 77—1659 was July 1, 1972.

During oral argument it was suggested the General Assembly intended that Public Act 77—1659 was to become effective when it became a law, *i.e.,* on October 28, 1971. The General Assembly specifically repealed and reenacted Public Act 77—1659 in June 1972, by Public Act 77—1871 (Laws of 1972, p. 148) with the additional provision that the amendment take effect upon its becoming law. Public Act 77—1871 was approved on June 26, 1972. The question was posed as to whether this

subsequent legislation indicated the General Assembly's intent concerning the effective date of Public Act 77—1659. (*Cf. Bruni v. Department of Registration and Education,* 59 Ill.2d 6, 11-12.) To accept this interpretation, however, would, in effect, give retroactive operation to Public Act 77—1871. Had the legislature intended this result, a clear expression of this intent would be necessary. (*People ex rel. American Federation of State, County and Municipal Employees v. Walker,* 61 Ill.2d 112, 118; *People ex rel. Baylor v. Bell Mutual Casualty Co.,* 54 Ill.2d 433, 440.) We find no expression of this intent in Public Act 77—1871.

Moreover, the reason the parties did not raise the issue of the applicability of Public Act 77—1871 to this case is disclosed by a reading of section 2 of that act, which provided:

> "Public Act 77—1659 \*\*\* certified October 28, 1971, is repealed; provided, however, that this repealer shall not affect any rights, obligations or actions arising pursuant to said Amendatory Act of 1971 prior to the effective date of this Amendatory Act of 1972." Laws of 1972, p. 175.

This provision clearly indicates that Public Act 77—1871 was not intended to be retroactively applied. While this provision reveals the legislature's misconception that Public Act 77—1659 became effective October 28, 1971, this erroneous interpretation can be afforded no validity under our decision in *Klinger,* which was based upon the constitutional and legislative provisions in effect on October 28, 1971. The circuit court, therefore, erred in holding the higher rate of compensation provided by Public Act 77—1659 was applicable at the time of claimant's second injury.

Claimant argues that the circuit court improperly allowed credit for the prior injury which he sustained. He concedes that when an award has been made for a prior injury, credit for the percentage of disability suffered

should be allowed in an award for a subsequent injury. He maintains, however, that the settlement with his employer was not an "award" under section 8(e) of the Workmen's Compensation Act for which credit should be given. Section 8(e) provides, in pertinent part:

> "In computing the compensation to be paid to any employee who, before the accident for which he claims compensation, had before that time sustained an injury resulting in *** the permanent loss of use or the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." Ill. Rev. Stat. 1969, ch. 48, par. 138.8(e)17.

The employer argues that the ordinary meaning of this provision indicates the legislature's intention that credit be allowed for the "loss" of use for which compensation has been paid and not upon the entry of an "award" by the Industrial Commission. Both parties cite various cases in support of their respective positions. A review of these cases is unnecessary, however, because none involves the precise issue raised here.

The cardinal rule of all statutory construction, to which other rules are subordinate, is that the true intent and meaning of the legislature must be ascertained and given effect. (*People ex rel. Carey v. Power,* 59 Ill.2d 569, 571.) The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. (*Certain Taxpayers v. Sheahen,* 45 Ill.2d 75, 84.) Absent statutory definitions indicating a different legislative intention, courts will assume that words have their ordinary and popularly understood meaning. (*People v. Dednam,* 55 Ill.2d 565, 568.) The clear and obvious meaning of the pertinent provisions of section 8(e) is that the permanent loss or permanent partial loss of use "for which compensation has been paid" shall be credited in any award for a

subsequent injury to the same member. The statute is devoid of any condition or limitation that an award must have been entered for the prior injury. The statute's only requirement is that compensation has been paid for the prior injury. *Cf. Caterpillar Tractor Co. v. Industrial Com.*, 397 Ill. 474, 483-485.

In his brief claimant does not contest the propriety of deducting the percentage of a prior disability in an award for a subsequent injury rather than deducting only the dollar amount paid. During oral argument claimant conceded that if credit is allowed for his prior injury, it should be for the percentage of the prior compensated disability. Therefore, the employer is entitled to a deduction from the present award of the prior 5% disability for which compensation was paid.

Accordingly, that portion of the judgment of the circuit court holding that the employer's payment of compensation for claimant's initial injury is a proper credit in an award for the subsequent injury is affirmed; those portions of the judgment holding that the higher rate of compensation was applicable and that the employer was entitled to credit for the dollar amount paid rather than the percentage of the disability compensated are reversed. The cause is remanded to the circuit court of Cook County with directions to enter an order remanding this cause to the Industrial Commission for entry of an award not inconsistent with the views expressed herein.

*Affirmed in part and reversed in part and remanded, with directions.*

SCHAEFER and CREBS, JJ., took no part in the consideration or decision of this case.